ORIGINAL

Approved: ~~16 MAG 3195.~~
JANE KIM
Assistant United States Attorney

Before: THE HONORABLE BARBARA MOSES
United States Magistrate Judge
Southern District of New York



- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

    - v. -

TOLGA SAFER YILMAZ,

        Defendant.

- - - - - - - - - - - - - - - - - x

SEALED
COMPLAINT

Violations of
18 U.S.C.
§§ 2261A and 2

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

       JOSE MORALES, being duly sworn, deposes and says that he is a Detective with the New York City Police Department (the "NYPD"), and charges as follows:

## COUNT ONE
### (Stalking)

      1. From at least in or about 2009 up to and including in or about at least May 2016, in the Southern District of New York and elsewhere, TOLGA YILMAZ, the defendant, with the intent to kill, injure, harass, intimidate, and place under surveillance with intent to kill, injure, harass, and intimidate another person, used the mail, any interactive computer service and electronic communication service and electronic communication system of interstate commerce, and any other facility of interstate and foreign commerce to engage in a course of conduct that placed that person in reasonable fear of the death of and serious bodily injury to that person and caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to that person.

      (Title 18, United States Code, Sections 2261A and 2.)

      The bases for my knowledge and for the foregoing charge are, in part, as follows:

2. I am a Detective assigned to the NYPD and Federal Bureau of Investigation ("FBI") Violent Crime Task Force, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement officers, witnesses, and others, as well as my examination of reports, records, and, among other things, audio recordings. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3. Based on my involvement in this investigation, my training and experience, my review of documents and records, and my conversations with other law enforcement officers and others, I have learned the following, in substance and in part:

   a. In or about 2008, TOLGA SAFER YILMAZ, the defendant, was a student at an undergraduate college in Portland, Oregon (the "College"). While at the College, YILMAZ met a female student ("Victim-1"). YILMAZ and Victim-1 dated on and off for short intervals of time from in or about the spring semester of 2008 to in or about the spring semester of 2009.

   b. In or about the fall of 2009, YILMAZ, who was no longer a student at the College, began harassing Victim-1. Among other things, YILMAZ called Victim-1's professors and falsely accused Victim-1 of committing academic misconduct. At one point, Victim-1, still a student at the College, contacted the College's Campus Police because of YILMAZ's harassment.

   c. In or about May 2010, Victim-1 filed an application for a restraining order against YILMAZ. On or about May 12, 2010, YILMAZ signed a no-contact agreement that required YILMAZ to, among other things, not contact Victim-1 directly or through third parties, including by email or phone.

   d. In or about 2010, Victim-1 graduated from the College and moved to New York to join a doctorate program at a university (the "University").

4. Based on my involvement in this investigation, my training and experience, my review of documents and records, and my conversations with other law enforcement officers and others,

including administrators, personnel, and affiliates of the University, I have learned the following, in substance and in part:

      a. From at least in or about 2010 until in or about April 2016, TOLGAR SAFER YILMAZ, the defendant, has continued to harass Victim-1, primarily through unremitting electronic communications, false allegations against Victim-1, and threats of violence directed to Victim-1, and also through unremitting electronic communications to professors, administrators, personnel, students, and/or entities of the University ("University Affiliates"), as well as family members and friends of Victim-1.

      b. Specifically, from at least in or about October 2011 to at least in or about April 2016, YILMAZ sent approximately 10,694 emails (the "Emails") to University Affiliates, the majority of which copied Victim-1. On some days, YILMAZ sent hundreds of these emails. For example, on or about January 25, 2014, YILMAZ sent approximately 379 such emails. Nearly all of the Emails harassed or threatened Victim-1. YILMAZ also sent additional emails to Victim-1.

      c. YILMAZ used over 30 different email addresses to send the Emails. Earlier emails, from in or about 2011 to in or about 2013, were sent from, among other email accounts, an email account with email sender "Tolga Yilmaz," and an email account known by YILMAZ's college classmates as belonging to YILMAZ. One of the email accounts with email address "[Victim's name][number]@[provider.com] was also used to send emails to an individual ("Individual-1") in which the email sender identifies himself as "Tolga Yilmaz," provides his country of citizenship, his date of birth, and his passport information, presumably so that Individual-1 would purchase a flight for the email sender. Based on my review of documents and records and law enforcement databases, I know that the personal identifying information provided by the email sender matches the personal identifying information of YILMAZ.

      d. The majority of the Emails identify Victim-1, either by name or description, are sent from or to email addresses that are connected to YILMAZ, Victim-1, or University Affiliates, copy Victim-1, or include content that is similar in language and tone to other emails sent by YILMAZ.

      e. The email accounts used by YILMAZ often used Victim-1's Name as the name of the email sender, and, for the

3

email address, included various combinations of parts or all of Victim-1's name or the names of University Affiliates and Victim-1's friends and family. For example, some of the email addresses used by YILMAZ were:

    [Victim-1's name][number]@[provider.com];

    Sameperson[number]@[provider.com];

    [Victim-1's name]ondrugs@[provider.com];

    [Victim-1's name]exboyfriend@[provider.com];

    Revenge[Victim-1's name]@[provider.com];

    Revenge[Victim-1's initials]@[provider.com];

    Rvng[Victim-1's initials]@[provider.com]; and

    [Victim-1's name]needstoapologize@[provider.com].

    f. In or about October 2015, YILMAZ began sending emails to University Affiliates and to Victim-1 with subject line: "I will kill [Victim-1]."

    g. In or about November 2015, YILMAZ began to use the email address "iwillkill[Victim-1's name]@[provider.com].

    5. Based on my review of electronic communications, records, and reports, and my conversations with other law enforcement officers and others, I have learned the following, among other things, concerning the content of the Emails sent by TOLGA SAFER YILMAZ, the defendant.

    a. On or about April 10, 2014, YILMAZ sent Victim-1 an email with the following subject line: "I AM GOING TO KILL YOU FOR CALLING ME WEAK!" The body of the email read: "THAT POLICE REPORT CANNOT STOP ME! YOU WILL SEE!"

    b. On or about April 19, 2015, YILMAZ sent University Affiliates and Victim-1 an email containing the following message: "[Victim-1] will not get to die of natural causes as long as I am alive."

    c. On or about August 22, 2015, YILMAZ emailed University Affiliates and Victim-1 the following message: "I am

going to kill that piece of shit if she does not apologize to me for [Victim-1's] attacks on my dignity and [Victim-1's] manipulations. I am going to slice [Victim-1's] body with the same cold-bloodedness as [Victim-1]. [Victim-1]'s not safe from me like [Victim-1] thinks [Victim-1] is. Justice will prevail."

    d. From at least in or about October 8, 2015, to at least in or about October 27, 2015, YILMAZ sent the following message to University Affiliates and to Victim-1, approximately 136 times: "I am going to kill [Victim-1] if [Victim-1] does not apologize to me and reverse all [of Victim-1's] damages on my life."

    e. On or about October 28, 2015, YILMAZ emailed University Affiliates and Victim-1 an email with the following subject line: "I will kill [Victim-1]." The message read: "FBI cannot do shit until after it happens."

    f. From on or about November 15, 2015, to on or about January 22, 2016, YILMAZ sent approximately 1,294 emails to University Affiliates and to Victim-1 that contained the following message or a similar version of the following message: "I am going to kill that manipulative, honesty-disabled, conceited, self-righteous, hypocritical piece of shit if [Victim-1] does not apologize to me for [Victim-1's] psychological abuses and reverse all [of Victim-1's] damages on my life." Many of these emails attached a photograph of Victim-1.

    g. On or about December 6, 2015, YILMAZ sent approximately 106 emails to University Affiliates and to Victim-1 that contained the following message or a similar version of the following message: "There is no escape from the consequences of ruining another person's life."

    h. On or about December 8, 2015, YILMAZ sent approximately two emails to University Affiliates and to Victim-1 that contained the following message: "[Victim-1], Your pain will be in proportion to what you put me through. The longer you keep this going, the worse it is going to be for you when I get my hands on you."

    i. On or about February 20, 2016, YILMAZ sent an email to University Affiliates and to Victim-1 that contained the following message: "I am going to riddle your body until justice is restored. You can't ruin a person's entire life and get away with it. You're going to suffer the most painful death

you can imagine for manipulating my and everyone else's perceptions of me and what you did to me, you cruel, hypothetical, selfish piece of shit!" This email attached a photograph of Victim-1.

        j. On or about March 24, 2016, YILMAZ sent an email to University Affiliates and to Victim-1 that contained the following message: "Soon I will be there." This email attached a photograph of Victim-1.

        k. On or about April 22, 2016, YILMAZ sent an email to University Affiliates and to Victim-1 that contained the following message: "I am going to kill [Victim-1] if [Victim-1] does not apologize to me fully and publicly for [Victim-1's] emotional and psychological abuses and reverse all [of Victim-1's] damages on my life. I will be in New York soon. You can't ruin another person's life and get away with it." This email attached a photograph of Victim-1.

        l. On or about April 26, 2016, YILMAZ sent an email to University Affiliates and to Victim-1 that contained the following message: "After I cut your throat open, I will invite the FBI myself." This email attached a photograph of Victim-1.

      6. Based on my review of electronic communications, records, and reports, and my conversations with other law enforcement officers and others, I have learned the following, among other things:

        a. On or about May 13, 2016, an email was sent from [Victim-1's Name]9898@gmail.com to the email account [Victim-1's first initial][Victim-1's last name]@[Company.com]. The subject line of this email was: "I know where you work now." The content of the email read: "See you soon." The email attached a photograph of Victim-1 and a photograph that appears to be of a building in New York, New York.

      7. Based on my review of documents and records, and my conversations with other law enforcement officers and others, I have learned the following, among other things:

        a. A "Safer Tolga Yilmaz" with the same personal identifying information as TOLGA SAFER YILMAZ, the defendant, is scheduled to arrive in the United States, at Portland International Airport, Portland, Oregon, from Istanbul,

Turkey, via Amsterdam, Netherlands, by plane, on or about May 17, 2016.

b. A "Safer Tolga Yilmaz" with the same personal identifying information as YILMAZ is and scheduled to depart from the United States, from John F. Kennedy Airport, New York, New York, to Istanbul, Turkey, via Paris, France, by plane, on or about August 2, 2016.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of TOLGA SAFER YILMAZ, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
JOSE MORALES
Detective
New York City Police Department

Sworn to before me this
17th day of May, 2016

_____
THE HONORABLE BARBARA MOSES
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK